UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAIME RODRIGUEZ,

                            Plaintiff,

v.                                                       9:10-CV-1013
                                                          (LEK/TWD)

FEDERAL BUREAU OF PRISONS; HYOSIM
SEON-SPADA, Nurse Practitioner, Federal
Bureau of Prisons; JOHN MANENTI, D.O.,
Northeast Regional Medical Director, member
of the Northeast Region Utilization Committee,
Federal Bureau of Prisons; JOHN/JANE DOE,
Regional IOP/ID Coordinator, member of the
Northeast Region Utilization Committee,
Federal Bureau of Prisons; J.L. NORWOOD,
Northeast Regional Director, Federal Bureau of
Prisons; HARRELL WATTS, National Inmate
Appeals Administrator, Federal Bureau of
Prisons, in their individual and official capacities,

                            Defendants.
_____

APPEARANCES:                          OF COUNSEL:

JAIME RODRIGUEZ
#34911-054
Plaintiff *Pro Se*
Federal Correctional Institution Fort Dix
Unit 5841
P.O. Box 2000
Fort Dix, New Jersey 08640

HON. RICHARD S. HARTUNIAN           PAULA RYAN CONAN, ESQ.
Attorney for Defendants                  Assistant U.S. Attorney
Office of the United States Attorney-Syracuse
P.O. Box 7189
100 South Clinton Street
Syracuse, NY 13261-7198

## REPORT- RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

This *pro se* prisoner civil rights action, commenced under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), was initially referred to Magistrate Judge George H. Lowe for Report and Recommendation by the Hon. Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. §636(b) and N.D.N.Y. L.R. 72.3(c). Upon Magistrate Judge Lowe's retirement on February 9, 2012, the case was reassigned to me. (Dkt. No. 51.)

Plaintiff, Jaime Rodriguez, is currently confined at FCI Fort Dix, New Jersey. (Dkt. No. 37 at ¶ 2.) Plaintiff asserts that Defendants Nurse Practitioner Hyosim Seon-Spada ("Seon-Spada"), Northeast Regional Medical Director, John Manenti, D.O. ("Manenti"), and John/Jane Doe, Regional IOP /ID Coordinator, all members of the Northeast Regional Office's Utilization Review Committee ("URC"), violated his Eighth Amendment right to adequate medical care by refusing to authorize surgery on his knee, despite the recommendation of contract orthopedic surgeons who had examined him.[1] (*See generally* Dkt. No. 37.) Plaintiff also claims that Defendants J.L. Norwood ("Norwood"), Northeast Regional Director, and Harrell Watts ("Watts"), National Inmate Appeals Administrator, violated his Eighth Amendment rights by denying his appeals from the URC's failure to approve the knee surgery. *Id.*

---

[1] Plaintiff's allegation that inmates with lesser knee damage have been approved for knee surgery could be construed as a vague equal protection claim arising from the denial of authorization for knee surgery. Any such claim is duplicative of Plaintiff's Eighth Amendment claim and is treated as a part of that claim. *See, e.g., Hardy v. Diaz*, No. 9:08-CV- 1352 (GLS/ATB), 2010 WL 1633379, at *8, 2010 U.S. Dist. LEXIS 39295, at *29 (N.D.N.Y. Mar. 30, 2010) (Baxter, M.J.)

Now before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint.[2] (Dkt. No. 42.) For the reasons set forth herein, I recommend that the motion to dismiss be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Amended Complaint

Plaintiff sustained a gunshot wound to his left knee in 1991. (Dkt. No. 37, ¶ 16.) On February 15, 2008, while Plaintiff was an inmate at the Lewisburg Federal Penitentiary, his left knee was bent beyond its limit of flexion and as a result became swollen to softball size with extreme pain. *Id*. Plaintiff was unable to bend his knee or walk. *Id*. From that point on, Plaintiff continued to suffer from constant cracking with increased chronic arthritis pain in his knee. *Id*. He also began suffering from sudden episodes approximately once a month where his knee jammed, causing extreme pain, swelling, and an inability to walk. *Id*.

Upon examination by a Lewisburg medical staff physician assistant on February 21, 2008, Plaintiff was diagnosed with a torn meniscal cartilage and issued Naproxen for pain and as an anti-inflammatory. *Id.* at ¶ 18. X-rays were taken and a referral was made to the Lewisburg contract orthopedic surgeon. *Id*. After examining Plaintiff on April 23, 2008 and reviewing x-rays of his knee, contract orthopedic surgeon, Dr. Ball, diagnosed Plaintiff with arthritis, bone

---

[2] N.D.N.Y. L.R. 7.1(a)(1) directs parties to include with their memoranda of law copies of all cited decisions that are reported exclusively on computerized databases, e.g., Westlaw, Lexis. Defendants failed to comply with that rule on their motion to dismiss, leaving Plaintiff without access to the unreported decisions cited by Defendants in preparing his opposition. (Dkt. No. 45 at 1, n. 1.) Because the Court has not considered or relied upon any of the unreported decisions cited by Defendants, Plaintiff has not been prejudiced by Defendants' failure to comply with the rule. However, Defendants are hereby put on notice that any future violation of the local rule requirement will result in the Court's rejection of the offending memorandum of law.

spurs, and torn and loose meniscal cartilage and told Plaintiff that his condition required surgery. *Id*. at ¶ 19.

Dr. Ball scheduled Plaintiff for an MRI and informed Plaintiff that he would see him again once he had the MRI results, at which point he would determine the necessary surgery. *Id*. Plaintiff had an MRI on November 12, 2008. *Id*. at ¶ 20. The MRI revealed a small effusion, an artifact, probably from the gunshot wound in the medial patella femoral joint, and decreased thickness in the posterior patella cartilage. (Dkt. No. 37 at p. 25.) The MRI also showed "considerable degenerative type abnormality in the medial knee joint compartment seen as loss of joint space, osteochondral irregularity and defects, osteophytes change, subchondral sclerosis and degenerative tears involving anterior and posterior horn of medial meniscus." *Id*.

Plaintiff received notice of case approval and referral to an orthopedic surgeon by the Lewisburg Health Services Utilization Committee on February 18, 2009. *Id*. at ¶ 20 and p. 20. However, on March 5, 2009, before surgery was performed, Plaintiff was transferred to FCI Ray Brook. *Id.* at ¶ 21. Plaintiff was examined by a Ray Brook medical staff physician assistant on March 13, 2009. The physician assistant determined upon physical observation that there was no foreign object in Plaintiff's knee and refused to issue any medication. He informed Plaintiff that there was no medical record of Plaintiff's current condition and refused to accept copies of Plaintiff's medical records. *Id.* Through the grievance procedure, Plaintiff was able to obtain Naproxen and was scheduled to see a contract orthopedic surgeon. *Id*.

Plaintiff was examined by Ray Brook contract orthopedic surgeon, Dr. Mina, on September 17, 2009. *Id*. at ¶ 22. Dr. Mina also reviewed Plaintiff's medical records and told Plaintiff he would need arthroscopic knee surgery and that another x-ray would have to be taken

before going forward.  *Id*.  Dr. Mina, who had reviewed Plaintiff's MRI results and the x-ray taken after the September 17th appointment, saw Plaintiff again on October 29, 2009.  *Id.* at ¶ 23.  At the second appointment, Dr. Mina explained the surgical procedure to Plaintiff and told him that he could expect about an 80% reduction in his chronic arthritis pain, and that the knee jamming and periods of extreme pain should be resolved.  *Id*.  Dr. Mina told Plaintiff that everything was in order, and the request for authorization for the surgery was submitted.  *Id*.

On December 2, 2009, Plaintiff learned that the request for surgery had been reviewed and denied by the URC.  *Id*. at ¶ 24.  The denial form did not include any rationale for the denial.  *Id*. at ¶ 24 and p. 24.  Plaintiff began the grievance process with respect to the denial, and on January 6, 2010, Ray Brook Warden, Deborah G. Schult, Ph.D., denied his request for an administrative remedy.  *Id*. at pp. 16-21.[3]

Thereafter, Plaintiff requested review of his case by Defendant Norwood.  *Id*. at ¶ 25.  In his grievance, Plaintiff informed Norwood that two orthopedic surgeons had recommended surgery and requested a review of his case and authorization for the surgery.  *Id*. at p. 22.  Plaintiff provided Norwood with a summary of his knee problems, a copy of the MRI report, and the orthopedic referral from the Lewisburg Utilization Review Committee.  *Id.* at pp. 22-26.  Norwood denied Plaintiff's appeal on February 12, 2010 on the stated ground that "[t]he consultation [for arthroscopic surgical repair of Plaintiff's knee] was denied by the Regional Review Committee because not all conservative treatment options have been exhausted" and "[m]edical staff advise that you are receiving appropriate treatment, and continue to have access

_____

[3] Page numbers in citations to filed documents refer to the page numbers assigned by the Court's electronic filing system rather than to the page number in the original document.

to sick-call." *Id*. at p. 27. Plaintiff's Central Office Administrative Remedy Appeal requesting the surgery was denied by Defendant Watts on May 19, 2010 for essentially the same reasons relied upon by Norwood. *Id.* at ¶ 26 and pp. 28-30. *Id*. at pp. 27 and 30.

When Plaintiff was finally able to obtain his medical records in April of 2011, he learned that in addition to the imaging records of his knee, the request for authorization for knee surgery given to the URC had included Ray Brook Clinical Director Dr. Marini's provisional diagnosis of "tears of anterior and posterior medial meniscus ... with possible loose osteochondral fragment." *Id*. at ¶ 41. Dr. Mina's reports had also been referenced and made available for review by the URC. *Id*. Those reports twice stated the need for arthroscopic surgery, citing loose osteochondral fragments, metallic foreign body, locking, buckling, osteoarthritis, and internal derangement with unstable tears of the medial meniscus. *Id*.

Plaintiff learned from his medical records that his knee surgery had been denied by URC member Defendant Seon-Spada, acting in the role of Regional Review, on the grounds that: (1) the Interqual Procedures Adult Criteria ("Interqual Procedures") had not been met because conservative treatment options had not been exhausted; and (2) the surgery was not approved by Defendant Manenti, Regional Medical Director. *Id*. at ¶ 40. Plaintiff has alleged that he had met all of the criteria for knee surgery under Sections 100, "Removal of intra-articular loose body," and 600, "Resection/repair of unstable meniscal tear," of the Interqual Procedures. *Id.* at ¶ 42. Further, in his Amended Complaint, Plaintiff has referenced a footnote allegedly in the Interqual Procedures which states that "[i]t is reasonable to perform expeditious surgery on patients with unstable meniscal tears without a trial of conservative therapy."

Plaintiff has alleged that the condition of his knee continued to worsen after the surgery

6

was denied with increased chronic arthritis pain, decreased range of motion, more frequent instances of locking of his knee with swelling and extreme pain, more frequent buckling, muscle atrophy, and overall loss of mobility. *Id*. at ¶ 43. In August of 2010, he had an episode in which his knee jammed up and he had to wait five days for medical care. *Id*. at ¶ 30. The physician assistant he saw told him that nothing more could be done and suggested he pursue the matter through a grievance procedure. *Id.* at ¶ 32.

According to Plaintiff, when he was examined by a nurse practitioner on December 17, 2010, she told him that there was nothing that could be done regarding his knee other than having another x-ray taken, scheduling an appointment with an orthopedic surgeon, and attempting to have another MRI done. *Id*. at ¶ 33. However, according to Defendant Norwood's March 15, 2010 response to one of Plaintiff's appeals, Plaintiff was also given range of motion exercises on December 17th that were found to have satisfied the exhaustion requirement, and his surgery had been approved by the URC on February 23, 2011.[4] *Id*. at p. 39.

### B.    Procedural History

Plaintiff sued Norwood and Watts as defendants in his original Complaint. (*See* Dkt. No. 1.) He also named "Jane and/or John Doe[s], Member[s] of the Northeast Region Utilization Committee" as defendants *Id*. at 1. Defendants Seon-Spada and Manenti, both of whom fall within Plaintiff's Jane and/or John Doe description, were not specifically named as defendants in Plaintiff's original Complaint. *Id.*

---

[4] Norwood's March 15, 2010 response to Plaintiff's appeal infers that giving Plaintiff range of motion exercises, not done until over a year after his surgery had been denied for failure to exhaust conservative treatment options, was the first action undertaken by the BOP medical staff to exhaust conservative treatment options so that Plaintiff could qualify for the knee surgery. (Dkt. No. 37 at p. 39.)

Defendants Norwood and Watts moved to dismiss Plaintiff's original Complaint in April of 2011.[5] (Dkt. No. 24.) Upon learning through a review of his medical records that Seon-Spada and Manenti were two of the John/Jane Doe Defendants (Dkt. No. 37 at ¶ 40), Plaintiff moved for and was granted leave to file an amended and supplemental complaint naming Seon-Spada and Manenti as Defendants. (Dkt. Nos. 31 and 36.) Judge Kahn directed that upon the timely filing of a signed amended complaint, Defendant Norwood and Watts' motion to dismiss would be denied as moot. (Dkt. No. 36 .) Plaintiff timely filed his Amended Complaint adding the Federal Bureau of Prisons ("BOP"), Seon-Spada, and Manenti as defendants. (*See* Dkt. No. 37.) Defendants thereafter filed a new motion to dismiss Plaintiff's Amended Complaint as against Defendants BOP, Manenti, Norwood, and Watts. (Dkt. No. 42.) Plaintiff filed papers in opposition. (Dkt. No. 45.) After the Summons and Amended Complaint were served on Defendant Seon-Spada (Dkt. No. 49), she was added to Defendants' motion to dismiss. (Dkt. No. 53.) As discussed below, Plaintiff has consented to dismissal of this action as against Defendant Seon-Spada. (Dkt. No. 64.)

There is no indication from the filings in the case, as reflected in the CM/ECF docket, that Defendant John/Jane Doe, Regional IOP/ID Coordinator and member of the Northeast URC, has been identified and served with process. In his Affirmation in support of his motion to amend and supplement his original Complaint, Plaintiff indicated that all of his attempts to learn

---

[5] Not long after this case was commenced and before Defendants filed their initial motion to dismiss, Plaintiff moved for a preliminary injunction compelling the Defendants to order his knee surgery at the earliest possible time. (Dkt. No. 8, at 1.) Defendants opposed the motion (Dkt. No. 17), which was ultimately denied and dismissed as moot after Plaintiff informed the Court on September 1, 2011 that he had received the knee surgery. (Dkt. Nos. 35 and 36.)

the identity of the IOP/ID Coordinator, believed by him to be the only remaining John/Jane Doe, have been in vain.[6] (Dkt. No. 31 at ¶ 8.)  Plaintiff hopes to obtain the information during the course of discovery.  *Id*.  In his opposition to Defendants' motion to dismiss, Plaintiff disclosed that he served discovery requests aimed at obtaining the identity of the John/Jane Doe on counsel for Norwood and Watts on December 3, 2010 and September 16, 2011, pursuant to Magistrate Judge Lowe's Order of November 23, 2010 (Dkt. No. 5) and Judge Kahn's Memorandum Decision and Order of September 6, 2011 (Dkt. No. 36) directing him to use discovery to ascertain Doe's identity.[7] (Dkt. No. 45 at 9, n. 5.)

     **C.**    **Summary of Grounds in Support of Plaintiff's Motion to Dismiss**

          1.    <u>Federal Rule of Civil Procedure Rule 12(b)(6) Failure to State a Claim Grounds for Dismissal</u>

Defendants contend that the allegations in Plaintiff's Amended Complaint do not support a claim that they were deliberately indifferent to his serious medical needs because: (1) it is clear from the allegations in the Amended Complaint that Plaintiff's condition was at no time one of medical urgency; (2) Plaintiff's condition was being addressed on an ongoing basis by medical providers; (3) Plaintiff's surgery was denied by the URC because conservative treatment options had not been exhausted; (4) mere disagreement over the proper course of treatment does not state a constitutional claim; and (5) Plaintiff's Amended Complaint does not satisfy the subjective

---

    [6] Plaintiff appears to have made unsuccessful attempts to obtain the names and titles of the members of the Northeast Regional URC from his counselor, the Ray Brook Legal Department, Defendants Norwood and Watts, and the Northeast Region Health Services Director.  (Dkt. No. 37 at ¶¶ 38-39 and p. 39.)

    [7] There is nothing in the CM/ECF Docket which indicates that Defendants have yet responded to Plaintiff's interrogatories seeking the identity of Defendant John/Jane Doe, although the information clearly appears relevant to the litigation.

component of the deliberate indifference standard.  (Dkt. 42-2 at 4-6.)  The individual

Defendants also claim that they are entitled to qualified immunity.  *Id.* at 10-12.

Defendants Norwood and Watts contend that they cannot be held liable on the theory of

*respondeat superior*, and that the Amended Complaint does not allege the personal involvement

necessary to state a claim for deliberate indifference to Plaintiff's serious medical needs, because:

(1) the denial of a grievance is insufficient to establish personal involvement: and (2) supervisory

officials are generally entitled to rely on the opinion of medical staff concerning the proper

course of medical treatment for an inmate.  *Id*. at 6-10.

> 2.    Federal Rule of Civil Procedure Rule 12(b)(1) Subject Matter Jurisdiction
>        Grounds for Dismissal

Defendants also seek dismissal of Plaintiff's Amended Complaint as against the BOP and

the individual Defendants in their official capacities for lack of subject matter jurisdiction on

sovereign immunity grounds.  (Dkt. No. 42-2 at 12-14.)   In addition, Defendant Seon-Spada

argues that 42 U.S.C. § 233(a) renders her immune from Plaintiff's *Bivens* claim because of her

status as a commissioned officer in the United States Public Health Service.  (Dkt. No. 53.)

## II.    LEGAL STANDARD GOVERNING MOTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)

### A.    Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A defendant may move to dismiss a complaint "for failure to state a claim upon which

relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  The motion tests the

formal legal sufficiency of a complaint by determining whether it conforms to Rule 8(a)(2) of the

Federal Rules of Civil Procedure, which requires that a complaint include "a short and plain

statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

**B.      Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

"The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is 'substantively identical' to the 12(b)(6) standard, except that the plaintiff has the burden of establishing jurisdiction on a 12(b)(1) motion." *S & R Dev. Estates, LLC v. Bass*, 588 F.Supp.2d 452, 460 (S.D.N.Y. 2008).  Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Lack of subject matter jurisdiction is not waivable. *Oscar Gruss & Sons, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003).  It may be raised at any time by a party or by the court *sua sponte*. *Id*.  This Court may consider material beyond the pleading, to resolve the question of subject matter jurisdiction. *J.S. ex rel N.S. v. Attica Central School*, 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968 (2005).

**III.    ANALYSIS**

**A.      Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

1.      Plaintiff's Claim Against the Federal Bureau of Prisons and the Individual Defendants Sued in their Official Capacity

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971), the Supreme Court recognized the existence of a cognizable claim for money damages for constitutional violations committed by federal agents acting under color of federal law.[8]  *See Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").

Plaintiff has named BOP as a Defendant in his Amended Complaint and has sued the individual Defendants in both their individual and official capacities.  (*See caption* Dkt. No. 37.) "Because an action against a federal agency [like the BOP] or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *Federal Reserve Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official capacity suit is treated as a suit against the governmental entity for immunity purposes).  The United States "has not waived the government's sovereign immunity ... from lawsuits based on constitutional claims,"  *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999), leaving an award of monetary damages against the Defendants in their individual capacities as the only *Bivens* relief potentially available to Plaintiff.  *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

---

[8]  A *Bivens* cause of action "is the federal analog to suits brought against state officials under ... 42 U.S.C. § 1983."  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  The constitutional standard of review for *Bivens* actions is the same as for claims brought under 42 U.S.C. § 1983, *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), and there is a "general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits."  *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (citation and internal quotation marks omitted).

In light of the sovereign immunity granted the BOP and the individual Defendants sued in their official capacity, the Court recommends dismissal of the Amended Complaint as against the BOP and the individual Defendants in their official capacity for lack of subject matter jurisdiction, without leave to amend.

### 2. Plaintiff's Claim Against Defendant Seon-Spada

Plaintiff has alleged in his Amended Complaint that Defendant Nurse Practitioner Seon-Spada, in her capacity as a member of the URC, disapproved the request for surgery on his left knee. (Dkt. No. 37 at ¶¶ 4, 22, 23 and 40, p. 24.) Defendant Seon-Spada has moved for dismissal on the ground that she is a commissioned officer in the United States Public Health Service ("USPHS") and immune from Plaintiff's *Bivens* claims under the Public Service Health Act, 42 U.S.C. § 233(a).[9] (Dkt. Nos. 53 and 53-1.) Section 233(a) protects commissioned Public Health Service officers and employees from being subject to suit "for damage for personal injury ... resulting from the performance of medical ... or related functions" performed in the scope of his or her employment.[10] *Cuoco,* 222 F.3d at 107) (quoting 28 U.S.C. § 1346(b)). The immunity extends to *Bivens* claims. *Id.* at 108.

As Plaintiff has conceded in consenting to the dismissal of the action against Defendant

---

[9] Because the Court is authorized to consider evidence outside of the pleadings in determining whether it has subject matter jurisdiction over the claims asserted against Defendant Seon-Spada, *see Attica Central*, 386 F.3d at 110, consideration of Seon-Spada's Declaration identifying herself as a commissioned officer in the USPHS on the issue of subject matter jurisdiction is proper. (Dkt. No. 53-1 at ¶ 1.) The Seon-Spada Declaration has not been considered by the Court with regard to Defendants' 12(b)(6) motion.

[10] The exclusive remedy for actions against USPHS members for claims alleging personal injury as a result of the performance of medical or related functions is against the United States pursuant to the Federal Tort Claims Act. *See* 42 U.S.C. § 233(a); *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000).

Seon-Spada  (Dkt. No. 54), Seon-Spada's alleged disapproval of the requested surgery, done in

her capacity as a member of the URC, falls within the protection of 42 U.S.C. § 233(a) and gives

her absolute immunity from Plaintiff's claims against her in this lawsuit.  Therefore, this Court

recommends dismissal of the Amended Complaint as against Defendant Seon-Spada in her

individual capacity for lack of subject matter jurisdiction, without leave to amend.

     **B.**     **Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State A Claim**

     Plaintiff claims that Defendants Manenti, John/Jane Doe, IOP/ID Coordinator and

member of the URC, Norwood, and Watts violated his Eighth Amendment rights in denying

authorization for his knee surgery and affirming the denial.  (Dkt. No. 37 at ¶ 9.)  The Eighth

Amendment to the United States Constitution prohibits "cruel and unusual" punishment.  The

word "punishment" refers not only to deprivations imposed as a sanction for criminal

wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S.

97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton

infliction of pain or if it is incompatible with "the evolving standards of decency that mark the

progress of a maturing society."  *Estelle*, 429 U.S. at 102 (citation and internal quotation marks

omitted).  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane

conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation

omitted).  In fulfilling this duty, prison officials must ensure, among other things, that inmates

receive adequate medical care.  *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

     There are two elements to a prisoner's claim that prison officials violated his or her

Eighth Amendment right to receive medical care: "the plaintiff must show that she [or he] had a

serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*,

581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted); *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). There is no bright-line test to measure the seriousness of a prisoner's medical condition. *Stevens v. Goord*, 535 F. Supp. 2d 373, 383 (S.D.N.Y. 2008). However, the Second Circuit has set forth factors to consider when determining whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702. Inquiry into whether a plaintiff had a serious medical need "must be tailored to the specific circumstances of each case." *Smith,* 316 F.3d at 185.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996 )). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be

drawn that the inmate had a serious medical need; and (2) the medical care provider actually

drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-03. The inmate then

must establish that the provider consciously and intentionally disregarded or ignored that serious

medical need. *See Farmer*, 511 U.S. at 825. An "inadvertent failure to provide adequate medical

care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-6. Prison officials

can deprive inmates of medical treatment by unnecessarily delaying adequate medical treatment.

*Smith,* 316 F.3d at 185.

      1.    <u>Plaintiff's Eighth Amendment Claim Against Defendant Manenti</u>

The doctrine of *respondeat superior* does not apply in *Bivens* actions. *Iqbal*, 556 U.S. at

676. Therefore, to be liable, a *Bivens* defendant must have been "personally involved in the

claimed constitutional violation." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009),315 *cert.*

*denied*, ___ U.S. ___, 130 S.Ct. 3409 (2010). Personal involvement by a supervisory defendant

may be established on a *Bivens* claim by evidence that the defendant:

> (1) directly participated in the constitutional violation; (2) failed to
> remedy the violation after learning of it through a report or an
> appeal; (3) created a custom or policy fostering the violation or
> allowed the custom or policy to continue after learning of it; (4)
> was grossly negligent in supervising subordinates who caused the
> violation; or (5) failed to act on information indicating the
> unconstitutional acts were occurring.

*Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006) (citing *Wright v. Smith*, 21 F.3d 496, 501

(1994)); *see also Colon Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[11]

---

[11] There is some disagreement in the district courts in this Circuit as to whether the five
factors continue to apply in the wake of *Iqbal*, 556 U.S. 662, or the decision nullified some or all
of the categories of personal involvement. *See Best v.City of New York*, No. 11 Civ. 4475 (JMF),
2012 WL 5458054, *4, 2012 U.S. Dist. LEXIS 160524, at *11-12 (S.D.N.Y. Nov. 8, 2012)
(Furman, D.J.) (collecting cases); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n. 14 (2d Cir.

Plaintiff has alleged in his Amended Complaint that one of the reasons for the denial of his knee surgery request in December of 2009 was that the surgery was "not approved by Regional Medical Director review." (Dkt. No. ¶ 40.) Defendant Manenti is alleged to have been not only a member of the URC but also the Northeast Regional Medical Director who did not approve authorizing Plaintiff's knee surgery. *Id.* at ¶ 5. Thus, despite the sparseness of allegations directly concerning Defendant Manenti, the Amended Complaint adequately asserts Defendant Manenti's direct involvement in the alleged violation of Plaintiff's Eighth Amendment rights.

Moreover, the allegations in Plaintiff's Amended Complaint set forth a facially plausible claim that Plaintiff suffered from a "serious medical condition," thereby satisfying the objective element of an Eighth Amendment deliberate indifference claim against Defendant Manenti. Two orthopedic surgeons found the condition of Plaintiff's knee not only worthy of treatment but in need of surgery. *See Chance*, 143 F.3d at 702. Manenti would have been aware of at least one of those opinions.[12] *Id*. at ¶ 41. In addition, Plaintiff has alleged that his knee problems significantly affected his daily activities, particularly when the knee jammed, and that he had chronic and substantial pain as a result of the problems with his knee shown in the MRI report. *Id.*; *see also Estelle,* 429 U.S. at 103 (the "sufficiently serious" standard includes denials of medical care that "may result in pain and suffering which no one suggests would serve any

―――――――――――――

2012) (expressing skepticism as to whether the pattern-or-practice framework survived *Iqbal* but not deciding the issue).

[12] It is unclear whether the recommendation for surgery by contract orthopedic surgeon, Dr. Ball was included with the information submitted in support of the request for authorization that was denied by the Northeast Regional URC.

penological purpose."); *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain."); *Hathaway*, 37 F.3d at 67 (a plaintiff with a degenerative hip condition who experienced great pain over an extended time and had difficulty walking had "serious medical needs").

Plaintiff has also made a facially plausible showing that Defendant Manenti, as Northeast Regional Medical Director and/or a member of the URC, acted with deliberate indifference in failing to approve the recommended knee surgery in December of 2009, thereby satisfying the subjective element of the Plaintiff's Eighth Amendment claim for pleading purposes. According to Plaintiff, the imaging records of his knee were submitted to the URC in support of the knee surgery authorization request. (Dkt. No. 37 at ¶ 41.) The MRI report itself showed significant damage to Plaintiff's knee. *Id*. at p. 25.) The reports of Dr. Mina made available with the request for authorization twice stated the need for arthroscopic surgery and described the problems with Plaintiff's knee as including loose osteochondral fragments, metallic foreign body, locking, buckling, osteoarthritis, and internal derangement with unstable tears of the medial meniscus. *Id*. at ¶ 41. Plaintiff's Amended Complaint does not reveal the existence of any medical evidence which supported denial of the requested surgical authorization. The denial appears to have been based solely upon the alleged Interqual Procedures requirement that conservative methods of treatment be exhausted before surgery is approved, without regard to the medical condition of Plaintiff's knee. *Id*. at ¶ 40 and p. 27.

Allegations concerning Defendant Manenti's failure to approve Plaintiff's knee surgery, despite unanimous medical support for the surgery, and the jamming, swelling, and extreme pain

in his Plaintiff's knee, are sufficient to make a facially plausible showing of deliberate

indifference on Manenti's part. *See Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2011)

(evidence suggesting that the utilization review panel ignored the recommendations of specialists

and plaintiff's treating physician in denying authorization for hip replacement surgery for reasons

unrelated to plaintiff's needs could reasonably be found to constitute deliberate indifference);

*Hathaway*, 37 F.3d at 67 (a prolonged delay in treatment can support an inference of deliberate

indifference).

Furthermore, Defendant Manenti and the URC's alleged reliance upon Interqual

Procedures requiring exhaustion of conservative methods of treatment before surgery can be

authorized[13] does not preclude a determination that the Amended Complaint has adequately

alleged deliberate indifference on Manenti's part. *See Johnson v. Wright*, 412 F.3d 398, 404 (2d

Cir. 2005) (deliberately ignoring the unanimous medical recommendations of plaintiff's treating

physicians in favor of reflexively relying on policy without independently assessing its soundness

can be found to constitute deliberate indifference); *Ippolito v. Goord*, No. 05-CV-6683 (MAT),

2012 WL 4210125, at *13-14, 2012 U.S. Dist. LEXIS 134164, at *38-40 (W.D.N.Y. Sept. 19,

2012) (Telesca, D.J.) (denial of treatment because plaintiff had not complied with a guideline

establishing prerequisites for treatment could create a triable issue of fact "(1) where there is

consensus among the prisoner's medical providers that treatment is necessary regardless of the

---

[13] Plaintiff has alleged that the Interqual Procedure did not, in fact, require the exhaustion of conservative methods of treatment before surgery could be authorized in his case. (Dkt. No. 37 at ¶ 42). Plaintiff's allegations, which the Court must accept as true for purposes of Defendants' motion to dismiss, *Hernandez*, 18 F.3d 136, provide further support for the conclusion that Plaintiff has stated a facially plausible claim of deliberate indifference on Manenti's part.

prerequisite, (2) where prison officials fail to determine whether the justifications for the ...

prerequisite apply to the individual patient, and (3) where prison officials 'reflexively' rely on the

purported soundness of the guideline itself, even where they are on notice that a departure might

be medically appropriate." (citing *Johnson*, 412 F.3d at 398))).

### 2.    Defendant Manenti's Qualified Immunity Claim

Defendant Manenti also seeks dismissal of the Plaintiff's Amended Complaint on

qualified immunity grounds.  (Dkt. No. 42-2 at 10-12.)  The doctrine of qualified immunity

protects government officials "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);  *see also McCullough v.*

*Wyandanch Union Free School Dist.*, 187 F.3d 272, 278 (1999) (governmental agent enjoys

qualified immunity when performing discretionary functions if either "(1) the conduct did not

violate clearly established rights of which a reasonable person would have known, or (2) it was

objectively reasonable to believe that the conduct did not establish clearly established rights.") .

"A right is clearly established if the contours of the right are sufficiently clear that a reasonable

official would understand that what he or she is doing violates that right."  *McCulloug*h, 187 F.3d

at 278.  For qualified immunity to bar a claim at the Rule 12(b)(6) stage, "[n]ot only must the

facts supporting the defense appear on the face of the complaint, ... but, as with all Rule 12(b)(6)

motions, ... the plaintiff is entitled to all reasonable inferences from the facts alleged, not only

those that support his claim, but also those that defeat the immunity defense."  *McKenna v.*

*Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Eighth Amendment "deliberate indifference" standard applicable in the medical care

context was clearly established at the time of the events alleged in Plaintiff's Amended Complaint. *See Farmer,* 511 U.S. at 834-40; *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). Moreover, as explained above, the allegations in Plaintiff's Amended Complaint and the exhibits are sufficient to establish a plausible claim of violation of the "deliberate indifference" standard with regard to Defendant Manenti. Therefore, while an ultimate finding of qualified immunity cannot be ruled out at this point, Manenti's request for dismissal based on qualified immunity grounds on his Rule 12(b)(6) motion is premature, and the Court recommends that Defendant Manenti's motion to dismiss the Amended Complaint as against him in his individual capacity be denied.

### 3. Plaintiff's Claims Against Defendants Norwood and Watts

Defendant Norwood, identified by Plaintiff as the Northeast Regional Director of the BOP, has been named as a defendant in Plaintiff's *Bivens* lawsuit because he denied Plaintiff's appeal from the URC determination denying the arthroscopic knee surgery recommended by Dr. Mina. (Dkt. No. 37 at ¶¶ 7, 23- 25, and pp. 22-27.) Plaintiff has sued Defendant Watts, identified in Plaintiff's Amended Complaint as the National Inmate Appeals Administrator, because he too denied Plaintiff's appeal.[14] *Id.* at ¶¶ 8, 23-24, 26, and pp. 28-30. Neither

---

[14] Plaintiff also appealed to Norwood and Watts seeking authorization for prison commissaries to sell glucosamine/chondroitin supplements as an alternative to the medication being given to him for his knee problems. (Dkt. No. 37 at ¶ 29.) The appeals were denied on the ground that the requested supplement was not available for sale at the Commissary pursuant to Program Statement 4500.07, Trust Fund/Deposit Fund Manual. *Id.* at ¶ 29 and pp. 31-37. Plaintiff's Amended Complaint appears to seek damages against Defendants only for denial of the recommended knee surgery and not for the denial of his request that glucosamine/chondroitin be made available in the Commissary. (Dkt. No. 37 at pp. 14-15.) Furthermore, although Plaintiff made a brief reference to his request for glucosamine/chondroitin and Norwood and Watts' denial in a footnote in his opposing Memorandum of Law (Dkt. No. 45 at p. 5, n. 3), he made no argument in the Memorandum in support of an Eighth Amendment claim based upon

Norwood nor Watts had the personal involvement necessary in the alleged violation of Plaintiff's Eighth Amendment rights to state a *Bivens* claim against them.  *See Thomas*, 470 F.3d at 497.

In his denial of Plaintiff's appeal from the URC determination denying authorization for knee surgery, Defendant Norwood noted that "the consultation [for arthroscopic surgery] was denied by the Regional Review Committee because not all conservative treatment options have been exhausted," and that "[m]edical staff [had] advise[d] that [Plaintiff] was receiving appropriate treatment, and continue to have access to sick-call."  (Dkt. No. 37 at p. 27.)  Defendant Watts noted in his denial that relevant portions of his medical records had been reviewed, and "[m]edical staff [had] advise[d] all conservative treatment options [needed] to be exhausted before surgery is considered."  *I*d. at 30.

"It is clear that 'affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983 [15][,]' particularly if the grievance involves medical care and the reviewer has no medical training." [16] *Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *7, 2010 U.S. Dist. LEXIS 39295, *25 (N.D.N.Y. Mar. 30, 2010) (Baxter, M.J.) (quoting *Manley v. Mazzuca*, No. 01CV5178 (KMK), 2007 WL 162476, at *10, 2007 U.S. Dist. LEXIS 4379, at *32 (S.D.N.Y.

---

the denial.  Even if he had, the law is clear that a prisoner is not entitled to receive treatment by every medical alternative.  *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1971).

[15] As previously noted, the constitutional standard of review for *Bivens* actions is the same as for claims brought under 42 U.S.C. § 1983.  *See Tavarez,* 54 F.3d at 110.

[16] The Amended Complaint does not allege that Defendants Norwood or Watts had medical training or any personal involvement in denying Plaintiff's knee surgery, that they played any role with regard to the Interqual Procedures, or that they exercised supervisory responsibility over the medical program in the Northeast Region or the URC.  (*See generally* Dkt. No. 37.)

Jan. 19, 2007) (Kara, D.J.)); *accord Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("a prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been personally involved if he does so.")[17] (citation and internal quotation marks omitted); *McKenna,* 386 F.3d at 437-38 (describing as "questionable" whether a supervisory official's rejection of a grievance would render him liable on an Eighth Amendment medical indifference claim and finding that where the official had supervisory responsibility over the medical program at the facility, his adjudicating role would not insulate him from responsibility for allowing allegedly unlawful policies within his supervisory responsibility to stay in effect). *See also Brock,* 315 F.3d at 164 (prison superintendent with no medical training who deferred completely to prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "medically indifferent").

Given that the allegations in the Amended Complaint regarding Defendants Norwood and Watts' involvement in the alleged denial of Plaintiff's Eighth Amendment right to adequate medical care are limited to the Defendants' denial of Plaintiff's appeals, the Court recommends that Norwood and Watts' motion to dismiss Plaintiff's claims against them in their individual capacity be granted, but that Plaintiff be given leave to replead.[18]

---

[17] Defendant Norwood's denial of Plaintiff's appeal from the denial of authorization for his knee surgery noting that "[m]edical staff [had] advise[d] that [Plaintiff] was receiving appropriate treatment, and continues to have access to sick-call." (Dkt. No. 37 at p. 27.)

[18] Defendants Norwood and Watts also sought dismissal of the Plaintiff's Amended Complaint as against them on qualified immunity grounds. Because the Court is recommending dismissal against them for failure to state a claim, qualified immunity with regard to Norwood and Watts is not discussed herein.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss the Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6) (Dkt. No. 42) be **GRANTED** in part and **DENIED** in part.  Specifically, I recommend the following:

1.     That Defendants' motion to dismiss Plaintiff's Amended Complaint as against the Federal Bureau of Prisons and Defendants Seon-Spada, Manenti, John/Jane Doe, Norwood, and Watts, in their official capacity, for lack of subject matter jurisdiction based on sovereign immunity grounds, be **GRANTED**, without leave to replead;

2.     That Defendant Seon-Spada's motion to dismiss the Plaintiff's Amended Complaint against her in her individual capacity for lack of subject matter jurisdiction on the ground that she is immune from Plaintiff's *Bivens* claim under 42 U.S.C. § 233(a) be **GRANTED**, without leave to replead;

3.     That Defendants Norwood and Watts' motion to dismiss Plaintiff's Amended Complaint as against them in their individual capacity for failure to state a claim be **GRANTED**, with Plaintiff being granted leave to replead; and

4.     That Defendant Manenti's motion to dismiss Plaintiff's Amended Complaint as against him in his individual capacity for failure to state a claim and on qualified immunity grounds be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: November 30, 2012
       Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge